# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIM DOAN, and I.D., by and through KIM DOAN, LEGAL GUARDIAN,<br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DOWNINGTOWN AREA SCHOOL DISTRCT,<br>　　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br>No. 19-959 |

## MEMORANDUM OPINION

**Timothy R. Rice**　　　　　　　　　　　　　　　　　　　　　　　　**September 30, 2021**
**U.S. Magistrate Judge**

　　Defendant Downingtown Area School District ("Downingtown" or the "District") moves for summary judgment on the sole remaining claim in this case: a Fourteenth Amendment Procedural Due Process claim brought pursuant to 42 U.S.C. § 1983.[1]  Pl. Br. (doc. 44-1) at 1.  I grant summary judgment in favor of the School District because the undisputed facts show that due process was available to Plaintiff I.D.

　　I.D. had the benefit of one-on-one, in-person, advanced math instruction for an entire school year.  Nonetheless, I.D.'s mother, Kim Doan, insisted multiple times, and in procedurally and substantively inappropriate ways, that Downingtown was instead legally required to drive I.D. back and forth to another school building daily to participate in a regular education math class there.  No hearing officer or court ever agreed with her.  No evidence or disputed facts

---

[1]　　Chief Judge Sanchez dismissed all claims in Doan's original complaint following oral argument, but allowed her to file an Amended Complaint.  7/31/2019 Order (doc. 12).  The matter was then transferred to Judge Rueter, who dismissed all but one claim in the Amended Complaint.  8/13/2020 Memorandum and Order (docs. 39 and 40).  After Judge Rueter retired, the case was transferred to me (doc. 42).

suggest a constitutionally protected right was compromised without access to procedural due process.

## I. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence and any inferences from the evidence must be viewed in the light most favorable to the non-moving party. See Ray v. Warren, 626 F.3d 170, 173 (3d Cir. 2010). If reasonable minds could conclude that there are sufficient facts to support I.D.'s claim, Downington's summary judgment motion should be denied. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It should be granted only if no "reasonable jury could return a verdict" for I.D. based on the evidentiary record. Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

## II. FACTS IN THE LIGHT MOST FAVORABLE TO I.D.

I.D. was a student at Lionville Elementary School from at least second grade, when he was identified for the gifted program. Am. Cplt. (doc. 13) ¶ 14. After a multidisciplinary evaluation, I.D.'s educational team determined he should receive accelerated math instruction, which was delivered via an online program. Id. ¶¶ 15-16. At the end of second grade, Doan and the educational team agreed that the online math acceleration had been unsuccessful. Id. ¶¶ 17-18.

Consequently, during third grade, I.D. was placed into the regular fourth grade math class. Id. ¶ 19. Doan and I.D.'s educational team agreed that this method of math acceleration was successful. See id. ¶ 22. Also during third grade, I.D. was diagnosed with specific learning disabilities that rendered him "twice exceptional;" i.e., he was eligible for services under both the federal special education statute, the Individual with Disabilities Education Act, 20 U.S.C. §

1400 et seq. ("IDEA"), and Chapter 16, the Pennsylvania law that requires public schools to provide special instruction and services for a subset of children identified as "gifted." Id. ¶ 20; 22 Pa. Code § 16. During fourth grade, I.D. joined the fifth grade class for math and again this method of math acceleration was successful. Am. Cplt. ¶¶ 21-22.

There were no regular sixth grade classrooms at Lionville Elementary School. Id. ¶ 24. Instead, all Downingtown sixth graders were sent to another building that contained just sixth graders, located driving distance from Lionville. Id. ¶¶ 24, 31, 46. Therefore, there was no regular sixth grade class I.D. could easily join for math while he was in fifth grade. Id. The District proposed that I.D. receive accelerated math instruction via an online platform, a method they were planning to use for several other children who had also been accelerated in math. Id. ¶ 26; SJ Mot. Ex. 2 Dickman Decl. ¶ 23. Doan rejected this plan and proposed that Downingtown transport I.D. back and forth to another building for sixth grade math class each day. Am. Cplt. ¶ 29.

Downingtown refused to allow I.D. to travel for math classes. Id. ¶ 46. Having reached an impasse, Downingtown issued a Notice of Recommended Placement ("NOREP") recommending the online program for fifth grade. Id. ¶¶ 25-26. Doan challenged it in a due process hearing. Id. ¶ 29. The Hearing Officer, for the most part, agreed with Doan. See 8/12/16 Hearing Officer Opinion (doc. 13 at 25) (hereinafter "Ford Opinion") at 37 ("The gifted math program and placement offered by the District for the 2016-17 school year is not appropriate").

Hearing Officer Ford found that an appropriate placement for I.D. "must include placement above grade level, but in a regular education classroom." Id. He also found that this placement "must continue until an evaluation . . . indicates that such a program is no longer

3

necessary or should be replaced with something different." Id. He stated, "[d]uring the 2016-17 school year, this means that [I.D.] must be placed in 6th grade Math in a regular education 6th grade math classroom." Id. He reasoned that, "the District proposes a return to the type of instruction that caused problems in the past." Id. at 36. He further explained that, "[w]hen gifted education is working, a school may not substantively alter a student's GIEP[2] (or the gifted portions of an IEP) without first evaluating the Student's needs." Id.

Nonetheless, Hearing Officer Ford did not fully endorse Doan's position, noting she had "not proven . . . that the only way to place [I.D.] in 6th grade Math in a regular education 6th grade math classroom [was] to transport [I.D.] to and from the 6th Grade Center." Id. He concluded that, "[i]f the 6th Grade Center truly is the only option, the District must provide transportation," but that, "[i]f the District wants to provide 6th grade math in a regular education 6th grade math classroom in some other way, it may do so." Id. at 37. He suggested that, "[t]he District may exercise its discretion regarding the physical location of the 6th grade math classroom." Id.

The District took two actions in response: (1) it appealed to the Commonwealth Court; and (2) it revised its plan for I.D. by removing the online instruction. Am. Cplt. ¶ 37; see S.J. Mot. Exs. 2-4. While Downingtown's appeal was pending in Commonwealth Court, Lionville administrators changed the school schedule to provide a certified sixth grade teacher for individual, in-person sixth grade math instruction for I.D. during the fifth grade math period. S.J. Mot. Exs. 2-4. They gave the teacher access to Downingtown's regular sixth grade math

---

[2]   An Individual Education Program ("IEP") is a written summary, developed in a prescribed manner by the educational team responsible for any child owed services under IDEA, that includes a host of information about the student's educational needs and services. 20 U.S.C. §§ 1401(14), 1414(d). A Gifted Individual Education Program ("GIEP") provides similar information for gifted students. 22 Pa. Code § 16.62.

4

materials and a separate classroom for her and I.D.  Id.  There was no online instruction or peer interaction.  Id.

Doan remained unsatisfied with the revised plan, and pursued a second due process hearing, this time before Hearing Officer Valentini.  Mot. to Dismiss Ex. D (doc. 4-2) at 52. Doan argued that the location the District had chosen to implement Ford's Order violated I.D.'s IDEA right to be educated in the Least Restrictive Environment.  Id.  Hearing Officer Valentini noted that, "[w]hen pressed to define an issue that would potentially be under my authority, counsel framed the question to be whether the current location . . . is a regular education classroom."  Id.  Because the requirement that I.D.'s accelerated math instruction take place in a regular education classroom was imposed by Hearing Officer Ford, whose opinion was then on appeal before the Commonwealth Court, Hearing Officer Valentini concluded that she had no authority to enforce the requirement, just like she had no authority to enforce Hearing Officer Ford's Order.  Id. at 52-53.  She further found that I.D. had no right to a "least restrictive environment" for instruction provided under a Chapter 16 gifted program (as opposed to those services provided under IDEA).  Id. at 54.  Doan did not appeal Hearing Officer Valentini's decision.

In March of that school year, the Commonwealth Court affirmed the Ford Opinion, finding specifically both that Downingtown should have conducted a re-evaluation before changing I.D.'s programming to online instruction and that I.D. was entitled to regular sixth grade instruction in a regular sixth grade classroom.  Downingtown Area School District v. K.D., No. 1485 C.D. 2016 (Pa. Commw. Ct. March 6, 2017) (doc. 13 at 39) ("2017 Commw. Ct. Op").  The court further found that the proposed online instruction did not satisfy "the Hearing Officer's determination that instruction occur in a regular education sixth grade classroom," stating

5

"[r]eceiving math lessons in a separate room via one-on-one, independent and computer-based learning can hardly be said to qualify as a 'regular education classroom.'" Id. at 55.

In response to the 2017 Commonwealth Court decision, Downingtown officially changed I.D.'s IEP to provide the one-on-one in-person math programming I.D. had been receiving all year and less occupational therapy. 5/4/2017 Amended Due Process Complaint, Mot. to Dismiss Ex. G (doc. 4-2) at 83 ("[I]n an IEP meeting on April 5, 2017, the District rewrote the IEP to state that the District feels [I.D.'s] current math placement, segregated by himself in a classroom of one, is the appropriate setting.").

Doan sought a third due process hearing in April 2017. 6/12/17 Decision by Hearing Officer Skidmore, ("Skidmore Opinion"), Mot. to Dismiss Ex. H (doc. 4-2) at 88. Doan challenged both the math placement and the occupational therapy services that had been offered as part of I.D.'s special education services. Id. She asked Hearing Officer Skidmore to change I.D.'s math placement for the balance of his fifth grade year. Id. In May 2017, Doan amended her due process complaint to request compensatory education. Mot. to Dismiss Ex. G (doc. 4-2) at 86; see also Mot. to Dismiss at 4 (acknowledging request for compensatory education in amended due process complaint).

Hearing Officer Skidmore did not acknowledge Doan's request for compensatory education, instead writing that Doan had "filed a response indicating that, while she does not disagree that the relief sought may not be ordered, she believes that the public good would be served by permitting the issue to be heard and decided." Mot. to Dismiss Ex. H (doc. 4-2) at 88. Hearing Officer Skidmore dismissed the complaint regarding I.D.'s math placement as moot because she could not award prospective relief due to the school year ending. Id. at 89. I.D.'s occupational therapy claim was dismissed on June 19, 2017, when the District and I.D.'s mother

reached agreement regarding his occupational therapy goals, and the complaint was dismissed entirely. Mot. to Dismiss Ex. I (doc. 4-2) at 91-93.

Five days earlier, Doan had filed a fourth due process complaint, this time seeking: (1) enforcement of the Ford Opinion and 2017 Commonwealth Court decision; (2) a declaration that the individual in-person sixth grade instruction was inappropriate; (3) a finding that I.D. should be in a regular classroom for accelerated mathematics; and (4) a determination that I.D. had a right to accelerated math instruction in the least restrictive setting. 8/1/2017 Hearing Officer Culleton Opinion, Mot. to Dismiss Ex. J (doc. 4-2) at 97. Hearing Officer Culleton found that he did not have authority to enforce Hearing Officer Ford's or the Commonwealth Court's decision, and that the claims "all boil[ed] down to one issue: whether the District violated any rule or order by providing [I.D.] with mathematics acceleration in a separate classroom." Id. at 98. Hearing Officer Culleton found he could not address this claim because it had already been decided by other hearing officers. Id. Doan appealed on October 19, 2017, and that appeal is still pending.[3] Mot. to Dismiss Ex. K (doc. 4-2) at 101. I.D. successfully completed sixth grade math and began studying Algebra the following year. S.J. Mot. at 7.

Legal Analysis

To prove procedural due process claims, plaintiffs must demonstrate they have (1) a constitutionally-protected right to "life, liberty, or property" that (2) was taken away without procedures that afforded them "due process of law."[4] Hill v. Borough of Kutztown, 455 F.3d

---

[3] According to the Commonwealth Court Prothonotary's office, this matter was dismissed on April 6, 2018, but the dismissal was vacated on May 8, 2018, when a motion for reconsideration was granted. That reconsideration is still pending.

[4] The District also argues Judge Rueter erroneously interpreted Judge Sanchez's July 2019 Order (doc. 12) allowing Doan to file an amended complaint when he permitted her to add I.D. as a plaintiff and bring a procedural due process claim. S.J. Mot. at 10. I concur with Judge

225, 234 (3d Cir. 2006). I.D. had a right to a gifted education under Pennsylvania law. Centennial Sch. Dist. v. Dep't. of Educ., 539 A.2d 785, 790 (Pa. 1988); see also Lisa H. v. State Bd. of Educ., 447 A.2d 669, 673-74 (Pa. Commw. Ct. 1982) (students who qualify under Pennsylvania's gifted statute have a state-created constitutional right to a specific kind of education). This Court also has held I.D. had a substantive right to re-evaluation before any major change was made in his gifted education plan. 8/13/20 Op. (doc. 39) at 16-17. Plaintiffs' claims that I.D. was deprived of those substantive rights, however, have been dismissed; the only question for me to decide is whether the District compromised I.D.'s right to procedural protection of those substantive rights when it continually contested the specific educational plan Doan requested.[5]

No specific procedure constitutes "due process" in every instance. Instead, courts evaluate the quality and quantity of pre-deprivation notice and opportunity to be heard in light of: (1) the private interests affected; (2) the risk the procedures pose of erroneous deprivation; (3) the probable value of any additional safeguards; and (4) the government's interest in the property right itself and the administrative burden in protecting it. Mathews v. Eldridge, 424 U.S. 319,

---

Rueter's analysis that the amendment was permitted within the terms of Rule 15(a) and further hold that it was also properly contemplated within Judge Sanchez's Order. Judge Sanchez ordered that Doan was permitted to make amendments that would "correct[] the pleading deficiencies identified in [his] Order." 7/31/2019 Order at 3. The Order acknowledged that plaintiff sought relief for I.D.'s benefit. Id. at 2 n.1. Because the deficiencies Judge Sanchez referenced included failing to "identif[y] a constitutional right which the District . . . may have violated," Doan was permitted to add I.D. as a party because he had standing to bring the procedural due process claim she identified. Id.

[5]   I do not decide whether the District's "refusal" to implement Hearing Officer Ford's decision violated procedural due process because the evidence shows that the District did not refuse to implement it. Whether the District's implementation actually complied with Ford's Order is a question of substantive, not procedural, due process, and is therefore outside the scope of this opinion.

8

335 (1976); see also Goss v. Lopez, 419 U.S. 565, 578-79 (1975) (due process requires at least pre-deprivation notice and an opportunity to be heard).

Pennsylvania's regulations provide ample procedural due process protections to students entitled to gifted educational accommodations. Schools are required to consult with parents when designing students' GIEPs, and to give notice of the planned services. 22 Pa. Code §16.62. If the parents and school disagree about the plan, students with GIEPs are entitled to largely the same "due process hearing" rights as students who contest their IEPs under IDEA. Compare 22 Pa. Code § 16.63 with id. § 14.162. If dissatisfied with the results of a due process hearing, students can appeal. 22 Pa. Code § 16.63(l).

Downingtown's plan following the Ford Opinion suffered from some of the same limitations as the original plan. For example, they both effectively isolated I.D. during his math period. The plans differed, however, in the modality of instruction: while the original plan would have left I.D. to navigate the online instructional platform on his own, the instruction that was delivered after the Ford Opinion was in-person. When Hearing Officer Ford found the original plan inappropriate, he explained that he was requiring a regular education classroom in part because I.D. had been unsuccessful with independent, computer-based learning in the past. Ford Op. at 3 ¶ 10 ("During independent gifted Math enrichment, [I.D.]would seek out peers to socialize with. [I.D.] would also use the computer to play math games instead of advancing math enrichment."). It is unclear that Hearing Officer Ford would have reached the same conclusion regarding the one-on-one in-person instruction, which did not offer the same opportunities for distraction.

Further, Hearing Officer Ford's conclusion that Downingtown was required to provide I.D.'s accelerated math instruction in a regular education classroom was based on his

determination that the District was required to re-evaluate I.D. before changing the form of his accelerated instruction, which had been in a regular education classroom, one grade ahead. Id. at 11 ("[W]hen a program changes, there should be evidence that the change was necessary in order to meet the Student's gifted needs. The Parent argues that this evidence does not exist. I agree."). When Downingtown revised its plan for I.D. and eliminated the online platform, it incorporated Hearing Officer Ford's reasoning about the kind of instruction that was most appropriate for I.D. At the same time, Downingtown appealed both Hearing Officer Ford's determination that online instruction was inappropriate for I.D. and his determination that the District was unable to find online instruction appropriate without conducting a re-evaluation.[6] 2017 Commw. Ct. Op. at 14 ("Student was required to be reevaluated . . . because a change from classroom-based instruction to primarily computer-based instruction is a change in instructional activities").

The Commonwealth Court reviewed only the original May 2016 plan for online accelerated instruction, not the revised in-person plan that was implemented in response to the Ford Opinion. Id. ("[W]e also agree with the Hearing Officer that the School District's NOREP, under which [I.D.] would receive his instruction through a computer-based program and some in-person instruction, was not appropriate"). Its statements about the one-on-one classroom, therefore, were limited to the online instruction environment rather than the in-person one-on-

---

[6] The District also argued that the online, independent instruction in its original proposal comported with the Ford Opinion because it was a "regular education classroom." The Commonwealth Court disagreed. 2017 Commw. Ct. Op. at 17. Nonetheless, the Commonwealth Court never addressed whether the one-on-one in-person instruction I.D. actually received was a "regular education classroom." Id. ("Principal testified [I.D.] would not receive math lessons in a classroom with his peers but in a separate classroom through a computer program, and she also admitted there was no sixth grade regular education math class at Lionville.").

10

one instruction I.D. received. Further, by confirming Hearing Officer Ford's opinion regarding the re-evaluation requirement, it held only that the District was required to re-evaluate I.D. before providing accelerated instruction outside a regulation education classroom; it did not address whether in-person individual instruction would be an appropriate placement following a re-evaluation.

While the appeal of the Ford Opinion to the Commonwealth Court was pending, I.D. was not entitled to Doan's preferred placement. 22 Pa. Code § 16.63(a). I.D. also had procedures available to him to challenge the revised plan. Doan requested and received a due process hearing. See Valentini Op. She did not, however, argue to Hearing Officer Valentini that the revised plan with individual in-person instruction was inappropriate. Instead, she argued that the revised plan did not effectuate the Ford Opinion because the individual instruction was not a regular education classroom, and that the District had violated I.D.'s right to be educated in the least restrictive environment. Valentini Op. at 54. Hearing Officer Valentini was not given an opportunity to evaluate the revised plan independently and therefore never decided whether it was appropriate for I.D.

Once the Commonwealth Court issued its opinion, Doan understandably thought the District was required to change the arrangement it had made in September because the one-on-one plan resembled the online plan the Commonwealth Court had affirmed was inappropriate. However, because the court did not address the one-on-one in-person instruction plan that was being used, the District was within its rights, at that point, to re-evaluate I.D.'s needs and recommend the same placement that, from its perspective, had been working well all year.

Again, Doan sought a due process hearing, but this time the "clock ran out" before I.D.'s fifth grade math placement could be changed. Hearing Officer Skidmore could have found the

placement inappropriate retrospectively and awarded I.D. compensatory education, which it appears Doan sought in an amended complaint. B.C. ex rel. J.C. v. Penn Manor Sch. Dist., 906 A.2d 642, 648 (Pa. Commw. Ct. 2006) (compensatory education is available for failure to provide gifted services); Mot. to Dismiss Ex. G (doc. 4-2) at 86. However, Hearing Officer Skidmore did not understand that this request had been made. See Mot. to Dismiss Ex. H (doc. 4-2) at 88 (dismissing due process complaint because Skidmore could no longer provide prospective relief). Even assuming that Doan had intended to challenge the in-person, one-on-one plan and request compensatory education, she still had process available to her after the Skidmore Opinion by appealing it to the Commonwealth Court.

Instead, she filed a fourth due process hearing request. 8/1/2017 Hearing Officer Culleton Opinion, Mot. to Dismiss Ex. J (doc. 4-2) at 97. She reiterated complaints she had made before, and Hearing Officer Culleton found he could not re-hear them. Id. at 97. Doan did appeal this determination, and it is still pending before the Commonwealth Court. Mot. to Dismiss Ex. K (doc. 4-2) at 101.

Even assuming that I.D. may be owed compensatory education if a hearing officer determined that the one-on-one in-person teaching was an inappropriate placement, that deprivation fails to constitute a procedural due process violation because I.D. ineffectively used the process that was available. There is no procedural due process violation when adequate procedure exists but a plaintiff was unable to figure out how to utilize it. For example, in Alvin v. Suzuki, 227 F.3d 107, 116–17 (3d Cir. 2000), the Court found no procedural due process violation when the aggrieved party held meetings and sent multiple letters purporting to start a grievance process, but sent them to the wrong people. The court concluded that, "[t]hough these

may seem like minor mistakes, the burden is on the aggrieved [party] to make the complaint in the right manner to the right individual before he can claim that the process has failed him." Id.

Similarly, in Smith McVey v. Twp. of Stafford, 704 F. App'x 114, 117 (3d Cir. 2017), the Court affirmed the district court's summary judgment in favor of defendants, who were accused of violating plaintiffs' procedural due process rights by improperly denying them promotions. Recognizing that plaintiffs had failed to appeal their denied claims through the requisite grievance process, the Court rejected plaintiffs' arguments that any such appeal would have been futile because it would have been to the same decision makers who denied the original grievance. Id. The Court held that the plaintiffs had produced no "evidence to support their claim that the appeals process would not have sufficed," and that it was "unwilling to hold as a matter of law without any evidence in support that an appeals process is inherently futile because the same decision-maker would review the appeal." Id.

Although some cases might feature unique circumstances that merit relief, see, e.g., S.B. by & through Kristina B. v. Cal. Dep't of Educ., 327 F. Supp. 3d 1218, 1230-32 (E.D. Cal. 2018) (a state law requiring special education plans to be issued based on the student's "geographic placement" made sufficient process unavailable when student had serious behavioral challenges, which resulted in her transfer to more than eight different placements in two years), the undisputed facts here fail to feature such circumstances.

I.D. was not deprived of due process. To the extent Doan presented the wrong issues in her due process hearings, her claim is denied under Alvin because she failed to utilize the available procedures correctly. To the extent the Hearing Officers reached the wrong conclusions, Doan's claim is denied under Smith McVey because she failed to appeal them.

An appropriate Order accompanies this Opinion.